First case of the morning, Sgt. Wilbur F. Justice v. Danberg et al. Actually, now it's v. Machtinger. Good morning. My name is Mark Nijelski, and I represent the appellants with defendants below. And I would like to reserve three minutes of my time for rebuttal. Before I start, Your Honor, if I may, I'll just introduce one of my clients. All right. Thank you, Your Honor. May it please the Court. This case, based on the briefing that has been done, has a singular issue facing this Court, and that's the issue of qualified immunity. Well, do we really have that issue? Yes. Did the Court reserve judgment on the issue of qualified immunity? Did she not? Your Honor, there is language that suggests that, yes, Your Honor. So what did she do? Well, she denied summary judgment on the grounds of qualified immunity. And under the analysis of Johnson v. Jones, that makes it appealable. Well, did she really deny summary judgment on the grounds of qualified immunity? Didn't she deny summary judgment because she wasn't prepared to grant summary judgment because she reserved on the issue of qualified immunity? Yes, Your Honor, but under Johnson, it's the denial of summary judgment where one of the issues being sought is qualified immunity. And clearly, what's before the Court are two purely legal questions here. The first question is, is Wilbur Justice's conduct in union negotiation, is that protected by the First Amendment? Well, that issue was decided by the Court in her grant of partial summary judgment to the plaintiff. Yes, Your Honor. Well, is that aspect of the order necessarily before us? Yes. Isn't just the qualified immunity issue before us, if it is at all? Well, Your Honor, that is part of the qualified immunity analysis. Is this law clearly established? Is it protected conduct? You're talking about the conduct in negotiating, but it was union conduct and a lot more than negotiating. And as a Delawarean, I very well remember the newspaper coverage that was going on two or three years ago about the correctional officers and about the lack of pay, about the inability to open up certain areas of prisons because of lack of correctional officers, about the forced overtime. And this was more than just negotiating. This was discussion, statements by members of the union, by correctional officers about the conditions that they were facing. And frankly, I as a citizen found it to be a topic of great interest and concern about how our prisons were being run. And I think when you try to limit what they were doing to contract negotiation, I don't think that is an adequate representation of what was going on. Well, Your Honor, Mr. Justice's retaliation claim is based on the singular fact that he was engaged in contract negotiations. Well, reading the briefs, that doesn't seem to be limited to that singular fact because they talk about what was going on in the newspapers, which reflects what I as a citizen of Delaware was seeing in the newspapers at the time. Yes, Your Honor, but Mr. Justice had nothing to do with any of that. He wasn't a speaker at any of those things. He was an officer at the union, and I gather that there was some unhappiness among the administration about what the union was discussing in public. And as an officer of the union, isn't there a likelihood that if you're mad at the union, you are going to display that displeasure to the officers of the union that are bringing things forward that the Minner administration perhaps did not want discussed in the newspaper? I understand, Your Honor, that a person can only assert their own constitutional rights, not somebody else's. That's right. But his right, his constitutional right as a member of the union, we don't know exactly what he did or didn't do in public discussion of what was going on, but certainly that type of discussion is constitutionally protected. And if it's an issue of was he involved or not, that, as what Mr. Machtiger may have known or not known, is a question that cannot be decided at this point of the litigation. Well, Your Honor, the district court decided that the protected conduct from Mr. Justice, and granted summary judgment, was his engaging in union negotiations. Mr. Justice, and the record is undisputed, that Mr. Justice didn't engage in any other conduct that could be potentially protected. Do you disagree that Mr. Justice was involved in union activity that is protected speech? I do disagree, yes, Your Honor. Why do you disagree? Because he never spoke. He never said anything, but he was, as Judge Roth just stated, a leader of the union, which itself was speaking to the media about the problems at the Delaware Institution. Yes, Your Honor, but the problem is that the Constitution is very individualistic. It's your constitutional rights or my constitutional rights and Mr. Justice's constitutional rights. He doesn't get the benefit of somebody else's constitutional rights. The fact that other members of the union were being quoted in the newspaper, they may have it protected, First Amendment. Now, you're suggesting that Mr. Justice had no involvement whatsoever in the statements that were made to the media about the prison conditions? Not a one. His sole basis of his claim is based on contract negotiations. That's the basis of his claim. Does that mean that because he made no statement, he has no retaliation claim against Nottinger? Your Honor, the theory of the retaliation is that he put in an application for promotion and that somebody misplaced it for three days, July 16th, 17th, and 18th. Because of that, through a series of events, he didn't find out about the interviews until the day of the interview. And his theory is that if he had more time to prepare for the interview, he would have done better at the interview. He blames Alan Mocktinger for that, where the evidence is undisputed. Alan Mocktinger had nothing to do with misplacing his application. Well, you say the evidence is undisputed. This case was resolved based upon two concise statements of facts and briefing by your client, but not the plaintiff. Is that correct? Yes, Your Honor. And it seems to me, if you look at the statements of facts, there are disputes. You contend there's no evidence. They contend there's lots of evidence from which inferences can be drawn. Yeah, they don't point to any evidence, Your Honor. They ask you to engage in a lot of inferences. That's true. All right, but that's what juries do. Juries decide inference based on inference. Based on circumstantial evidence of who was in what position at what time, what was made known to the prison officials at what time, what was said by the union at what time. And from my reading of the appellee's brief, it seems to me their position is that there is sufficient circumstantial evidence that Mr. Mockinger was aware of what was going on, that there is an issue of material facts. Your Honor, in fact, if you read very carefully what they did do in the district court, they disputed, but the only thing they made a contention about was whether Mr. Mockinger may have known about his application problem earlier than second step of the grievance. And that was the only thing they ever, and that's in their supplemental appendix. Did the district court make any specific finding or conclusion about qualified immunity? They did not grant it. Well, what she said was that I'm reserving on the issue of qualified immunity. Now, I got the impression that what the district court was concerned about was causation, whether Mockinger, in fact, retaliated on the basis of protected activity. That's the impression I got. You disagree with that? No, Your Honor, that may be part of it. The problem is, though, I think that this court can review the legal decisions made by the district court. All right, but that was my question. She did make a specific legal decision with regard to qualified immunity? Yes, Your Honor. She said she would reserve it for a later date. Well, I understand she reserved it for a later date, but she did make a specific decision, did she not? Didn't she say that there was a constitutional right on the part of the union to be protected or to have protected speech? Well, Your Honor, this case involved Wilbur Justice, and what she found was that his conduct in engaging in the union contract negotiations was protected. She believed under the First Amendment. All right, she said the case has to go to a jury. Is that correct? Yes, Your Honor. What issue does the jury have to decide? I don't know, Your Honor. Isn't it a matter of causation? Your Honor, there is no evidence of causation. I mean, if you look at it, all there is is the plaintiff below is asking you to engage in conjecture, a lot of things, and not believe the undisputed testimony that's in the record. Did the court decide whether the right was clearly established prior to the violation? Did the court address that issue at all? No, Your Honor. Well, here's what she said in her opinion. Plaintiff's involvement, that's Mr. Justice, with COAD, the court officers or corrections officers union, is a constitutionally protected activity under the First Amendment. So she made a very specific legal decision. Is that correct? That's correct, Your Honor. Now, the only question is whether your client's conduct retaliated because of that activity. No, Your Honor. Am I mistaken? Yes, Your Honor. Could you correct it, please? The question is, is he a constitutionally protected right? Engaging in negotiation, which is his only claimed activity in the union, is not constitutionally protected. It's not, doesn't come under the First Amendment. So if there is no... You don't disagree with my reading of her opinion. You disagree with the district court's conclusion. Yes, Your Honor. All right. I see I'm just about out of time. I will reserve. Thank you, Your Honor. Thank you. We'll hear from you again on rebuttal. Good morning. Good morning. May it please the Court, my name is Steve Neuberger and together with my co-counsel, Tom Neuberger, we represent the plaintiff in this case, now retired, Sergeant Wilbur Justice. Could you clarify what I asked about Mr. Justice's involvement with the union and what activity he engaged in that was supposedly protected activity? What specifically did he do? He did a number of things, Your Honor. First, he associated with the union, which in and of itself is constitutionally protected. Just union association by itself. Going to the next step, what did he specifically do aside from the group right, the right to associate? He engaged in contract negotiations, that is true. He represented union members in grievance proceedings, things of that nature. He participated in the general decision on behalf of the union when the union made the decision to publicly oppose the Minner administration's running of the prisons. When the union decided to go public, when they stopped trying to work within the system and went to the citizenry. Which of those activities occurred at or about the time that his application for a better position was presumably lost? All of them, Your Honor. Is that in the record? I believe so, Your Honor. There is the issue on appeal as to what actually constitutes the appellate record. With that caveat, yes, Your Honor. The issue of, at the time when his application was lost, as Judge Roth indicated in the newspapers, it was nearly every day that there were articles and union officials, not Mr. Justice, not my client, I will readily concede that, but union officials were publicly criticizing the running of the prisons. They were talking about the escapes, the dangers, the rapes of correctional counselors because doors were propped open because they didn't have enough prison guards to guard the prisons. Things of that nature. That was constantly in the paper, probably from about February of that year through the gubernatorial election in November of 2004. So it's your position that he was retaliated against because of his leadership position in the union and because of his negotiating on behalf of union members? And because of his simple association with the union. The opportunity, it's plaintiff's theory, Your Honor, that the opportunity presented itself to the defendant to retaliate against a high-ranking union official. The union is out there and they're raising all kinds of hubbub in the media. They're blowing the whistle. They're doing all of those kinds of things. Well, the defendant couldn't retaliate against the other union officials because they weren't applying for promotions at the time. The only union official who was applying for a promotion at the time was my client. And I'm sorry, Your Honor. I was going to ask, wasn't the district court wrong in finding that there is a protection if the activity was collective bargaining and contract negotiations? I mean, you seem to be making that distinction that the retaliation was because of his association, not because of contract negotiations. Isn't that the way you want to cast it? Because if it was on account of collective bargaining or negotiations, you have a problem in terms of First Amendment protection. Isn't that correct? That is not correct, Your Honor, and I will explain to the court why that's not right. All right. What case says that collective bargaining and contract negotiations alone give you a First Amendment right? Sure, Your Honor. It's Smith v. Arkansas State Highway Commission. It's a case which the defendant cited. It's a case which the district court cited in support of its conclusion. It's also a case that I cited. The court indicates that – Well, there it says First Amendment is not a replacement for labor relations law, and hence there's no constitutional right to collective bargaining. Sure, Your Honor. And what that indicates in that case and also the Third Circuit case which my opponent cited, that's in the context that there's not a First Amendment right requiring the government to actually negotiate with you. The union is allowed to negotiate. The union has a right to negotiate, things of that nature. It's the same thing in the petition clause context, Your Honor. A public employee has a First Amendment right to petition the government. But as there's abundant law out there saying that the government doesn't have to respond, it doesn't have to respond under the First Amendment. The employee has the right to speak, but there's no response necessary from the government. It's the same here in the union association context, Your Honor. The union has the right to bargain collectively, but the government doesn't have to respond. And in the Third Circuit case cited by the defense, it talks about how the First Amendment is not a replacement for the National Labor Relations Act. Is all collective bargaining First Amendment protected? Is that what you're saying? I'm saying that the action of the union by engaging in it is protected. Yes, Your Honor. And going beyond that, I would cite to the Labov v. Lally case, Third Circuit, 1987, where the court indicated that efforts of public employees to associate together for the purposes of collective bargaining involve associational interests which the First Amendment protects from hostile state action. Is that your best argument on behalf of Mr. or Sergeant Justice? In other words, you're not asserting that he was speaking out in matters of public concern. You're saying that he was involved in union negotiations, and that alone is entitled to First Amendment protection. That is not the extent of my argument. That is part of my argument. Yes, that is part of it. The other part is that he was associating with the union that was publicly blowing the whistle and being a thorn in the governor and the Department of Corrections' side. Associating actively or merely because of his leadership position? Both, Your Honor. I think by holding a leadership position in the union, he is associating actively. So if I look at the record, I can see that he was standing with the other union members when they were speaking to the media about the various problems at the institution? Your Honor, for example, there's a copy of a newspaper article which was in the record below. It's a photograph, but it's a photograph of plaintiff walking with the other union officials, for example, as they're going to court after they were all sued for engaging in their union activity. Sued by the state of Delaware, sued by the governor, sued by the Department of Correction. In that sense, yes, Your Honor. Go ahead. Go ahead. Continue. Your Honor, I readily concede the lead theory is one of union association. The secondary theory is one of contract negotiation, that individually engaging in contract negotiation is protected. Could you address the issue of jurisdiction? Sure, Your Honor. And that goes to the issue of qualified immunity, which is a two-part process, the first part obviously being violation of a constitutional right. Now, the constitutional right here is one of the First Amendment retaliation. The court below, Judge Robinson, indicated the plaintiff engaged in First Amendment-protected union association, union activity. So all that leaves are the Mt. Healthy prongs of the causation analysis. Is that issue before us, properly before us, that there was a constitutional right? I don't think so, Your Honor. Under my reading of Johnson v. Jones and the Third Circuit cases discussing Johnson v. Jones, because the district court was unable to complete the qualified immunity analysis because of the fact disputes, I don't believe it is properly before the court. Your Honor, I will concede the law is a little bit unclear on this. But don't we have to determine whether or not there's a constitutional violation? I mean, if there's not a constitutional violation, why worry about the issue of fact about what Mr. Machtinger knew or didn't know? Or why worry about the issue of fact as to exactly what Mr. Justice did or didn't do? But don't we have to define the constitutional right that we are going to use in analyzing and reviewing the material issues of fact? Your Honor, I believe that, yes, that can be done. Is it strictly necessary? It goes to the issues underlying the collateral order doctrine. It's there to prevent piecemeal appeals. Whether we go up on each separate issue in a protected speech, protected association case, we could be up here several times. My understanding is that's the concern, but I will defer to the court on that. Let me ask you a hypothetical. Sure. Hypothetically, there is no issue that we have found that Machtinger did have a memo on his desk saying that justice had applied for the promotion and Machtinger had slashed it, crossed it, and said no. And so there's no – and this is hypothetical. There's no issue. So we know what was done. Don't we then have to determine – or can we not then determine on the qualified immunity as to exact – on this preliminary appeal exactly what the constitutional right was? Your Honor, I think it depends on if Mr. Machtinger is contesting that he is – Well, he is. Whether he's contesting that he retaliated. He is contesting. Hypothetically, he is contesting. And if hypothetically he is contesting and there is that memo, I think we're in the same position we're in now. And don't we have to determine whether or not there is a constitutional right involved here? Your Honor – In the same way, even though there are issues of fact as to what happened, don't we have to determine whether or not there was a constitutional violation or perhaps remand the case to the district court to set out more precisely what the constitutional violation may have been? Under that scenario, Your Honor, I believe Johnson v. Jones and his progeny says that there is no jurisdiction despite the fact that the protected activity determination was determined and that is a matter of law. The conflict in the law, if I may, is I believe in the Riley v. Atlantic City case, the court did the opposite of what I'm saying now. Did the court – I think I need to bring that to the court's attention. Did the court in this case determine there was a constitutional right that was violated? That was violated, no, but they determined that – It – she. I apologize. Yes, Judge Robinson determined that plaintiff engaged in protected First Amendment activity but did not – could not reach the causation issue because of the fact – Let me – I sort of got that impression reading in the bulk of the opinion, but this is her last sentence before the conclusion. And she says, the court reserves judgment on the issue of qualified immunity until such time as an actual constitutional violation has been identified. Sure. Would you make sense of that? It seems to me that she says that constitutional violation has not been identified. I don't believe a constitutional violation has been identified because to violate the First Amendment, it's a three-part test. Number one, you have to engage in protected activity, which is now Pickering, Garcetti, and Konecki-Meyers, the combination of those three analyses. Then next you go to the Mount Healthy analyses and substantial or motivating factors. All right, so – So she may have decided the first prong. Yes, Your Honor. Yes, it was protected activity. Right. Yes, Your Honor. But she didn't reach two and three. And as a result, because it is a three-pronged analysis, no constitutional violation was identified. So what's left for the jury to decide, causation? Causation. That's all? I don't believe the court made a determination on adverse employment action. You think that's what the district court meant by reserve judgment? I can't decide the full qualified immunity issue until the jury gets to decide the fact issue of causation? Until the jury resolves the fact dispute on causation, yes, Your Honor. All right. Do you agree that the briefing here was only on behalf of the defendant and you did not really brief or provide documentation to the court? Is that correct? Yes, Your Honor. I will readily concede this was an unusual set of briefing circumstances. I've never before encountered it. No, I don't believe either. At the time and to a lesser extent now, the court has been struggling with the backlog due to Judge Jordan's promotion to this court. And different judges have dealt with it in different ways. Judge Schlick cut in half the number of pages he allows for summary judgment briefing. Judge Farnon has borrowed a concept from our state court system holding regular motion days. At the time, Judge Robinson, and I'm not sure if she did this in all of her cases or just in the cases which she inherited from the vacant judgeship, this case was originally assigned to Judge Jordan. She ordered this short, concise statement of facts. And I believe if the court looks at page 17, footnote 13, I think Judge Robinson explains a little bit what she was trying to do there. And I think it was a little bit of a gatekeeper function, Your Honor, to see as a way to cut through some of the paper. I don't have a better way of really saying that. But she indicated that it's important to note that at this stage only the defendant has briefed it. So the court is reviewing the evidence to determine, number one, if summary judgment practice is warranted, which I read that to mean normal summary judgment briefing, back and forth, opening, answering, reply briefing. Or two, if the evidence is sufficient to deny the motion and go to trial. And I think Judge Robinson chose option number two. Now you, I believe in your motion to supplement the record, you indicate that there are documents as to causation that you would have provided to the court had you been permitted to have briefing. Testimonial, yes, Your Honor. So that it's possible that this case could go back for one of two things. Either you supplement the record so that she can then address again the qualified immunity issue if she sees that your evidence is so persuasive as to, you know, what happened here. I think the court. Or go to trial. I believe the court, I believe if we go back down, the case is going right to trial. The court, I believe, the court did its own legal research here. I did not give the court all the law which it found. The court searched the record for these things. We're allowed to do that. Yes, Your Honor. Although it's often better when the lawyers do it. I prefer doing it, Your Honor. I enjoy brief writing. But, Your Honor, I believe that the court went through the record and determined that there is a fact dispute, which is what I would be trying under the court's, under the scenario the court just offered. That's what I would be trying to persuade the court, that there is a fact dispute. Therefore, we should go to trial. Well, the defendant says, I had no role at all. In other words, wants to prove a negative. If you have documentation and transcripts of deposition that show the definite involvement of Machtinger, that he can only rebut by saying, gee, I don't remember that or, you know, that didn't happen. It seems to me she could revisit the issue. That's what I'm saying. And she would, I guess what I'm having trouble following is revisit the issue to do what? To rule that there is a fact dispute and my case is not thrown out and go to trial? I guess the court already did. Yeah. But, Your Honor, I will also, again, just to concede something else. This is not a direct evidence case. I don't have a smoking gun. This is a circumstantial evidence case. But, I mean, she could deny qualified immunity. She could. If you had. But, Your Honor, at the end of the day, I have never faced a situation where a plaintiff has been granted summary judgment on causation in light of the defendant's denial in a First Amendment retaliation case that I did not retaliate. I would love to see that one day, but I've never seen it. That's the only issue left for judgment, actually, whether by verdict or. . . Does that include credibility of who says. . . Yeah, causation. Yes. Yes, Your Honor. And, I mean, if the court addresses that. If we were to agree with you that the only issue left is a fact issue, does that affect our jurisdiction here? If the only issue is a fact issue. Your Honor, if there's a fact issue, then I think it does affect the jurisdiction. The court does not have jurisdiction with the caveat that the law is unclear here. And, again, I cite to that Riley case, which I have to bring to the court's attention, where the court decided the protected activity issue, so thus took jurisdiction on that, and on causation said there was a fact dispute and remanded. I think that's clearly contrary to Johnson and the Third Circuit's opinions interpreting Johnson, but it is a reported opinion. And I've been up here before the court on circumstances identical to this with the same defense counsel where protected activity was determined below, there was a fact dispute on causation, and the court remanded it and said we don't have jurisdiction. That is what it is, Your Honor. I guess that's your best result if you had your choice. I just want to try, Your Honor. If there are no further questions, I don't really have anything that we haven't covered or which needs to be addressed. Thank you. The whole reason for the collateral order doctrine was to protect people like Alan Mocktiger from standing trial where there's a case where there's allegations under 1983 based on there is no constitutional right, there's no constitutional violation. And you heard it from the plaintiff's counsel. They want to go back to trial because that's what the next thing would be. There wouldn't be another hearing. There wouldn't be another summary judgment attempt. But I don't think it matters about that. I don't think the causation issue matters. Could you respond to Mr. Neuberger's argument that collective bargaining and contract negotiations constitute First Amendment-protected activity? Well, that's not the way I read those two cases, Your Honor, with all due respect to Mr. Neuberger. I see quite the opposite. In fact, it appears that it's clearly established that it's not protected. It's the opposite. But just resolving that one legal issue, which clearly is within the jurisdiction of this Court to do under Johnson v. Jones, the matter can be resolved by granting qualified immunity to Alan Mocktiger because there is no such constitutional right for collective bargaining. But we have to review what the district court said. And if the district court said, I reserve on the issue of qualified immunity because I cannot find, I cannot be sure there was a constitutional violation, that's, you know, she didn't really make a determination as to whether there was a constitutional violation. She said he had a right. Yes, Your Honor. But you're going back and saying he absolutely, there is just no doubt that that, and there's no fact issue as to whether he had a right. That's correct, Your Honor. Thank you. Thank you, counsel. The case is well argued. We'll take it under advisement.